## STATE *vs.* FLAVIUS O. BEAL.

### Penobscot. Opinion January 9, 1901.

*Indictment. Variance. Nuisance. Practice. R. S., c. 17, §§ 11, 17; c. 18, § 95.*

An indictment charged that the whole of a piazza erected and maintained by the defendant, and described by metes and bounds, was a nuisance. Assuming, as the defendant claimed that the proof was that only portions of the piazza were within the street, *held;* that there is no fatal variance, for that reason, between the allegation and the proof.

Failure to prove the allegation of an offense of this sort, to the extent charged, does not necessarily result in a fatal variance between allegation and proof; nor did it, in this case.

It is not a question of the identity of the offending thing, but only to what extent the thing offended.

An abatement of a nuisance will not be ordered when, for any reason, it cannot properly or lawfully be carried into effect, as when a building is described as wholly a nuisance, but not all of it is such.

In such case, the county attorney may properly enter a nolle prosequi as to so much of the building as is not a nuisance,. and thus make the record of conviction the correct basis for an order of abatement, if such order is in other respects deemed proper and advisable.

The court are not bound to consider questions raised in argument that are not reserved in the bill of exceptions.

Exceptions do not lie when it appears that the presiding justice did not with-
hold from the jury the consideration and decision of any facts which are
material and pertinent to the issue.

ON EXCEPTIONS BY DEFENDANT.

Indictment against the defendant for erecting, maintaining and
continuing a nuisance, to wit, a certain piazza on the front of the
Penobscot Exchange hotel in Bangor, which obstructed a certain
public highway known as Exchange Street in Bangor.

To the indictment, respondent pleaded not guilty.

The alleged nuisance is set out in the indictment as follows:
"And the jurors aforesaid, upon their oath aforesaid, do further
present that Flavius O. Beal of Bangor, in the County of Penob-
scot aforesaid, on the first day of October, A. D. 1898 did unlaw-
fully and injuriously erect and build and cause to be erected and
built in and upon the easterly side of said (Exchange) street a cer-
tain piazza sixty-three feet long and six and sixty-five one-hun-
dredths feet wide with a platform three and one-half feet high and
with a roof over the same supported by pillars and steps leading
from the sidewalk upon said street to the platform of said piazza on
the north and south ends thereof, and steps leading from the side-
walk to said platform on the westerly side thereof, said piazza being
attached to and built upon the westerly side of a certain hotel
located upon the easterly side of said (Exchange) street known as
the Penobscot Exchange."

It was admitted that the easterly bounds of Exchange street can
be made certain by records or monuments. That May 6, 1836,
said Exchange street was widened by the city of Bangor eighteen
feet—eight feet of land being taken on the easterly side of said
street and ten feet being taken on the westerly side of said street,
and that the easterly line of said Exchange street, as widened, ran
parallel to the westerly wall of said Penobscot Exchange and dis-
tant five inches therefrom.

The defendant offered testimony tending to show that three
flights of stone steps upon the westerly side of said Penobscot
Exchange, leading up into said hotel from Exchange street, and
two flights of stone steps or roll-ways leading down from said street

into the basement on said westerly side of said hotel, one flight or roll-way being located near the northwesterly corner of said hotel and the other flight or roll-way being located near the southwesterly corner of said hotel, had existed from the time said hotel was built in 1828 until 1880, and that in consequence thereof and by virtue of the statute the line of said stone steps and roll-ways became the true bounds of Exchange street so far as the territory covered by the steps and roll-ways was concerned.

The defendant also offered testimony tending to show that portions of the said piazza, described in said indictment as constituting a nuisance, were erected within the limits of the territory covered by said stone steps and roll-ways.

It was admitted by the defendant that so much of said piazza as was not erected within the limits of the territory, covered by said stone steps and roll-ways, was within the limits of said Exchange Street.

The court instructed the jury as follows: "On the other hand, the contention of the government is, in the first place, that the steps are not a part of the building, and no matter for what period they existed, they could not change the bounds of Exchange Street; and, in the second place, that, even if it were true in law that the steps were a part of the building, and true in fact that they existed for a period of forty years, so that the bounds of the street as to the territory covered by the steps would be thereby changed, that as a portion of this piazza was still within the limits of the street as claimed by the State, and as admitted in substance by the defense, that the position on the part of the respondent would constitute no defense to this indictment. Now, gentlemen, I instruct you, as a matter of law, that if you are satisfied,— and I understand it is admitted, or that there is no substantial contention about it,— that the bounds of Exchange Street can be made certain by records as has been testified to by Mr. Coombs, and that a portion of the piazza was erected by Mr. Beal within the limits of Exchange Street, then all the evidence introduced by the defense in this case admitting it to be true, would constitute no defense to this indictment."

The jury returned a general verdict of guilty.

The defendant requested the following instructions:

1. That the stone steps leading to the Penobscot Exchange constituted a part of the building itself and although the jury should find that the bounds of Exchange Street were made certain and that said stone steps stood within said bounds, yet if said steps had so stood for forty years subsequent to May 6, 1836, then the erection and continuance of said steps on Exchange Street until they were torn down (in 1880) were legally justified and said steps did not and could not be deemed a nuisance.

2. That if the jury find that the stone steps stood and were maintained within the line of Exchange street for a period of forty years subsequent to May 6, 1836, then said steps as located became the bounds of said street at the points of their location; and if upon removal thereof in 1880, other steps were erected in their place, such new steps so far as they covered the territory embraced within the limits of the stone steps are not and cannot be deemed a nuisance.

3. That so much of the present structure as is built and maintained upon the land covered by the stone steps leading to the Penobscot Exchange is lawfully there, and is not and cannot be deemed a nuisance.               .               .

4. That in order to convict, the government must prove the nuisance as laid in the indictment. That the nuisance as laid in the indictment is a certain piazza 63 feet long, and 6 and 65-100 feet wide, with a platform 3 and 1-2 feet high and with a roof over the same supported by pillars and steps leading from the sidewalk upon said street to the platform of said piazza on the north and south ends thereof, and steps leading from the sidewalk to said platform on the westerly side thereof. That the whole structure just described is indicted as an entity and in its entirety as constituting the nuisance, but if the jury find that any portion or portions of said structure are within the limits of the stone steps as aforesaid and that said stone steps had existed for forty years subsequent to May

6, 1836, then such portion or portions are legally there and do not constitute a nuisance.

5. The alleged nuisance being described in the indictment with exactness and particularity as a piazza 63 feet long, 6 and 65-100 feet wide, with a platform 3 and 1-2 feet wide, etc., etc., and it being impossible to strike out the whole averment without taking from the indictment the part essential to the allegation of the offense intended to be charged, it is necessary that the whole description should be proven exactly as it is set forth; and if you are satisfied that the stone steps or any flight thereof existed continuously for a period of forty years after May 6, 1836, and that any portion of this piazza is within the area covered by said steps, then I instruct you that such part is legally there and does not constitute a nuisance, and that this respondent cannot be held upon this indictment.

6. The alleged nuisance being described in this indictment as a piazza 63 feet long, 6 and 65-100 feet wide, etc., etc., and attached to and built upon the westerly side of the Penobscot Exchange Hotel and in and upon the easterly side of Exchange Street, if you are satisfied that the easterly line of said street is situated five inches westerly from the westerly wall of said hotel, and that any portion of this piazza is within the five inches between said line and said wall, then I instruct you that this respondent cannot be held upon this indictment.

The presiding justice refused to give the requested instruction except so far as they were already embraced in the instructions given by him to the jury. To the instructions and refusals to instruct the defendant excepted. The indictment, docket entries, charge of the presiding justice to the jury and the evidence taken in the cause were made part of the exceptions.

*B. L. Smith*, County Attorney, for State.

Counsel argued: (1) The indictment is sufficient and there is no variance;

(2) That the steps are no part of the building, but are simply appurtenant thereto, and that even if defendant acquired title to

the land upon which the steps rested, under the statute, it gave him no title to the intervening spaces, and is no defense to this indictment against the present structure, which is an entirety covering the entire area:

(3)  The evidence offered would constitute no defense, because an individual cannot acquire, against the public, a prescriptive right to maintain a nuisance, no matter for what length of time he may continue the same.

(4)  Defendant cannot justify the present nuisance by showing that he has acquired a prescriptive right to maintain another nuisance dissimilar in character and extent.

*F. H. Appleton and H. R. Chaplin,* for defendant.

So far as the territory covered by the steps and roll-ways is concerned, and so much of the piazza as is erected within said line, it cannot be deemed a nuisance. *Commonwealth* v. *Blaisdell*, 107 Mass. 234; *Hyde* v. *Middlesex*, 2 Gray, 267 ; *Farnsworth* v. *Rockland*, 83 Maine, 508.

Buildings fronting on public ways when the bounds can be made certain, when they have been continuously maintained for a period of more than forty years, shall not be deemed nuisances.  The stone steps and roll-ways attached to the hotel were constituent parts of the building itself and therefore manifestly fall within the meaning of the word "buildings" as used in the statutes.  The exterior lines, therefore, of these steps and roll-ways became the bounds of the easterly side of Exchange street at the respective points where the steps and roll-ways were located; and their erection being legalized by lapse of time, and the eastern boundaries of Exchange street at these points by force of the statute being defined by the line of the steps and roll-ways, the steps and the roll-ways thereby ceased to be within the limits of the highway. *Stetson* v. *Bangor*, 73 Maine, 359.

So much of the present structure as rests upon the territory covered by the stone steps and roll-ways is rightfully and legally there, and under the statute is not a nuisance and cannot be abated as such.  So much of the structure as rests upon the intervening

land, we admit is unlawfully there; but the trouble with this indictment is that the whole structure as an entity and in its entirety is indicted as a nuisance—not merely the portion of the structure that is unlawfully there, but such portions of the structure as are innocently and legally there, and for this reason, in brief, we contend that this indictment cannot be maintained. *State* v. *Sturdivant*, 21 Maine, 13.

It being impossible to strike out the whole averment without taking from the indictment the part essential to the allegation of the offense intended to be charged, it is necessary that the whole description should be proven exactly as it is set forth. *States* v. *Howard*, 3 Sumner, 14; *Commonwealth* v. *Wellington*, 7 Allen, 299.

What would ensue, if upon a general verdict of guilty in this case, an abatement of the nuisance should be ordered by the court? By the language of the warrant, the form of which is prescribed in R. S., c. 17, § 13, the sheriff is commanded to forthwith cause the nuisance as particularly described in the indictment and of which the respondent was adjudged guilty to be abated; so that under such a warrant, the sheriff would be compelled to abate as a nuisance this whole piazza, although certain parts of it were legally and rightfully maintained, and were declared by the statutes not to be a nuisance. It would seem at least to be illogical, if not unauthorized, for the court to order these portions of the piazza to be destroyed and removed which are legally and rightfully there under the law. What is unlawfully there, the court could order abated if it knew, or could ascertain from the indictment or the verdict, what portions of the structure were unlawfully there; but we are unable to see how it could order to be abated such portions of the structure as were lawfully there.

The statute does not authorize the removal of a building fronting on the public way, when the bounds can be made certain unless it has been there less than forty years; if it has been there forty years, or more, its continuance is justified and it cannot be removed. This indictment condemns the whole structure as a nuisance—the innocent as well as the offending part—the lawful as well as the unlawful portions.

In a criminal case, the court cannot direct a verdict of guilty even when the facts are admitted beyond dispute, and the question of guilt or innocence depends wholly upon a question of law which the court must determine. *U. S.* v. *Taylor*, 11 Fed. Rep. 470.

SITTING: WISWELL, C. J., EMERY, WHITEHOUSE, SAVAGE, FOGLER, JJ.

SAVAGE, J. Indictment for nuisance, wherein the defendant is charged with having unlawfully and injuriously erected, continued and maintained, within and upon the easterly side of Exchange Street in Bangor "a certain piazza sixty-three feet long, and six and sixty-five hundredths feet wide with a platform three and one-half feet high, and with a roof over the same supported by pillars, and steps leading from the sidewalk upon said street to the platform of said piazza on the north and south ends thereof, and steps leading from said platform on the westerly side thereof, said piazza being attached to and built upon the westerly side of a certain hotel located upon the easterly side of said street known as the " Penobscot Exchange," to the great damage and common nuisance of all the citizens of the state.

The erection and maintenance of such a structure as is described in the indictment is not denied by the defendant. But he claims, and at the trial offered evidence tending to show, that a portion of the land covered by the piazza is not now within the limits of Exchange Street; that for more than forty years prior to the building of any piazza three flights of stone steps led up from the street into the hotel; and two roll-ways led down from the street into the basement of the hotel, that though these steps and roll-ways, or some portions of them, were originally within the street limits, yet by reason of their having existed there for more than forty years, the line of the stone steps and roll-ways had become, under the provisions of R. S., chapter 18, § 95, the true bounds of Exchange Street, so far as the territory covered by the steps and roll-ways was concerned. The defendant's evidence further tended to show that portions of the piazza described in the indictment were erected within the limits of the territory covered by the stone steps and

roll-ways, while defendant admitted that the remainder of the piazza was within the limits of Exchange Street, and his learned counsel, in argument, very frankly and properly concede that the portion of the piazza admittedly within the limits of Exchange Street is legally a nuisance.

In brief, then, the position of the defendant as to the facts is, that the piazza complained of is built in part over land which had formerly been occupied for more than forty years by the stone steps and the roll-ways; and that substantially all of the remainder is over land between the flights of steps and between the steps and the roll-ways, but within the limits of the street; or briefer still, that part of the piazza as described is without the street limits, and part within.    And from this arises the only defense offered.    The indictment charges the whole piazza, described by metes and bounds, to be a nuisance.    The defendant says truly that so much of it as lies outside of the street limits is not a nuisance, and hence he argues that if the proof be that only a part of the piazza is a nuisance, then there is a fatal variance between the proof and the allegation, that the state must prove all the piazza described to be a nuisance, or the indictment cannot be maintained.    For this purpose he asked to have his evidence tending to prove his claims, as we have defined them, submitted to the jury, and presented several requests for instructions, all in effect bearing upon the question of variance.    The presiding justice declined to give the requested instructions, but did instruct the jury, among other things, that if they were satisfied that the bounds of Exchange street could be made certain by records, and that a portion of the piazza was erected by Mr. Beal within the limits of Exchange street, then all the evidence introduced by the defense in this case, admitting it to be true, would constitute no defense to this indictment.    Exceptions were taken to this instruction and to the refusals to instruct.

All the evidence introduced in the case tended to show only that some portions of the piazza were outside the street limits.    This was the defense.    The instructions, therefore, were to the effect that, if part of the piazza was within the street, the fact that other

parts were not, would constitute no defense. And so of the refusals to instruct. A single question is presented by the exceptions,—that of the alleged variance. Assuming the facts to be as claimed by the defendant, do they show a defense to this indictment? If they do, the exceptions must be sustained; if not, the instructions were correct, and the defendant has not been aggrieved.

The question may be viewed in a two-fold aspect. In the first place, the building is described with great particularity. Its length and width and other particulars are alleged with exactness. And the defendant, assuming, as we now do, that the building as described is not all within the street, argues that it is necessary that the whole description should be proven exactly as it is set forth, that no part of the description can be rejected as surplusage, and that it is impossible to strike out the whole descriptive averment without taking from the indictment the part essential to the allegation of the offense intended to be charged. It is undoubtedly true, that when a person or thing necessary to be mentioned in an indictment is described with even unnecessary particularity, all the circumstances of the description must be proved; for they are all made essential to the identity, 1 Greenleaf on Evidence, § 65; and a variance in proof of particulars is fatal, for proof of identity may depend upon preciseness of description. *State* v. *Noble*, 15 Maine, 476. But in this case no complaint is made either in exceptions or argument that *a* piazza with the particulars described was not proved with sufficient particularity; but the complaint is that all of the piazza so described and proved was not within the street. And this raises another, and, we think, a different question, and that is, does the failure to prove the allegation of an offense to the extent charged result in a fatal variance between allegation and proof. We think not necessarily. It is laid down by Mr. Wharton in his work on Criminal Evidence, § 145, that failure to prove allegations of number, quantity and magnitude in their entirety is not a fatal variance, where the proof pro tanto supports the charge. And we think this case falls within the principle of that rule. The piazza in this case was charged to be wholly a nuisance, to the limits of the description, and the state sought to

prove that fact. If the state failed to prove it to the full extent, it is not the less true, as admitted in argument, that the piazza in parts was a nuisance. If one were charged with creating a nuisance by placing a log twenty feet long in the street, would it be reasonable to hold that the prosecution must fail if it should appear that six inches of one end of it extended beyond the street line? We think it would not. And what would be true of a log is true of a piazza. The law requires no such nicety even in criminal pleading. By so holding, no right of the defendant is jeopardized. His defense is not thereby made more difficult or uncertain.

The question here relates not to the identity of the offending thing, but only to what extent the thing offended. The defendant places great reliance upon *Commonwealth* v. *Wellington*, 7 Allen, 299, where the defendant was indicted for desecrating a public burying ground, described by metes and bounds, and the question arose whether the whole land described had ever been used, occupied or appropriated as a burying ground. The court held that failure to prove the entire land to be a burying ground would give rise to a fatal variance, and placed their decision upon the rule, which we have already stated, requiring exact proof in matter of description. If there be no distinction between that case and this, we can only say that we are not convinced by the reasoning of that court. The rule, as we have already stated, touches the identity of the thing alleged to be offending, and upon the branch of this case, which we are now considering, that question does not arise.

The defendant also urges upon us the consideration that the statutes, under which this prosecution has been begun, authorize the court, besides imposing a fine, to award an abatement or removal of the nuisance, R. S., c. 17, § 11; and that by the warrant which the statute prescribes, R. S., c. 17, § 13, the sheriff is commanded to forthwith cause the nuisance as particularly described in the indictment, and of which the defendant was adjudged guilty, to be abated. The argument is, that the warrant must follow the description in the indictment, and that consequently, in case of a general verdict of guilty, a building, all of which is alleged to be

a nuisance, though only a part of it may be proved to be so, may, and must, if warrant issues, be ordered to be abated, the lawful portion of it as well as the unlawful.

If the court called upon to render judgment were required to order an abatement, this position of the defendant would be one of great weight and perhaps decisive, for it cannot be that a prosecution for a nuisance can be sustained if it must result that a building must all be abated, where only a part of it is proven to be a nuisance. We think that the answer to this proposition is, that the court is not required to order an abatement, if for any reason it cannot properly or lawfully be carried into effect. Whether there shall be an abatement or not rests in the legal discretion of the court, and we cannot presume that such discretion will ever be violated. The judge, to whom application is made for judgment of abatement, must hear and decide this question like all others. If it appears that a building described as wholly a nuisance is not all of it such, it will be his duty to refuse to order its abatement; and he may refuse for other and sufficient reasons. The matter of abatement, and the hearing and decision thereon, are entirely distinct from the trial of the main issue of guilt before the jury; and the decision is only to be made when the question arises.

Moreover it is proper that the county attorney should enter a nolle prosequi as to so much of the piazza as is not within the limits of the street. By adopting such a course, a record of a conviction may itself be made the correct basis for an order of abatement, if such an order is in other respects deemed proper and advisable by the justice to whom application is made.

The defendant argues that the presiding justice exceeded his authority in directing a verdict for the state, but this point was not saved by the exceptions; and if it had been, it would not be tenable, for the justice did not withhold from the jury the consideration and decision of any facts which were material and pertinent to the issue.

We think the defendant's exceptions should be overruled.

*Exceptions overruled.*
*Judgment for the state.*